**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CINDY CORCORAN,<br><br>                Plaintiff,<br><br>     v.<br><br>G&E REAL ESTATE MANAGEMENT SERVICES, INC.<br><br>                Defendant. | Case No. 3:20-CV-00018-CSH<br><br>APRIL 21, 2020 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant, G&E Real Estate Management Services, Inc. ("G&E"), respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff Cynthia Corcoran's Second Amended Complaint in its entirety.

## Table of Contents

I. FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2
II. LEGAL STANDARD ...................................................................................................... 3
III. ARGUMENT .................................................................................................................... 4
   A. Failure to State a Claim for Negligent Misrepresentation ........................................... 4
   B. Failure to State a Claim for Negligent Infliction of Emotional Distress ...................... 6
   C. Failure to State a Claim for Breach of the Covenant of Good Faith & Fair Dealing or Wrongful Termination .................................................................................................. 9
      1. Connecticut General Statutes § 31-51i ................................................................ 11
      2. EEOC Guidance .................................................................................................. 12
IV. CONCLUSION ............................................................................................................... 14

The Second Amended Complaint sets forth four claims based on Plaintiff's assertion that she was wrongfully terminated but she abandons all causes of actions relating to statutory discrimination and harassment relating to her sexual orientation. What is left are four common law causes of action, none of which hold any weight. Indeed the Second Amended Complaint fails to state a claim upon which relief can be granted, as Plaintiff fails to meet the pleading requirements for negligent misrepresentation, negligent infliction of emotional distress, breach of the implied covenant of good faith and fair dealing or wrongful termination. As it relates to the latter two claims, Plaintiff fails to set forth an important public policy that can form the basis of the claims. Accordingly, the Second Amended Complaint should be dismissed in its entirety.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Cynthia Corcoran, alleges that she was hired by G&E as a senior chief engineer on or about July 23, 2012. (Doc. 43, ¶8.) She admits that, when she applied for the position, she "did not disclose" that she had previously been "convicted of certain felony violations." *Id.* at ¶¶49-50. In or about 2018, G&E conducted a background check on Plaintiff and discovered the felony conviction, and thus that she had lied on her employment application. *Id.* at ¶57. As a result, she was terminated. *Id.* at ¶¶58-60.

Plaintiff initially filed a complaint with the Connecticut Commission of Human Rights and Opportunities ("CHRO") against Newmark Knight Frank Valuation & Advisory, LLC ("Newmark"). (Doc. 19, ¶5.) The CHRO issued a Release of Jurisdiction on or about September 30, 2019. *Id*. at ¶6. Plaintiff served a six-count complaint on Newmark Knight Frank Valuation & Advisory, LLC ("Newmark") on December 6, 2019 and filed the Complaint with the Connecticut Superior Court, Docket No. MMX-CV19-6026960-S, on or about December 12, 2019. Defendant removed the case to federal court on January 3, 2020 based on diversity jurisdiction, pursuant to

28 U.S.C. §§ 1332(a)(1) and 1441.  (Doc. 1.)  Plaintiff thereafter amended the complaint to change the defendant from Newmark to G&E and to add a seventh count for discrimination on the basis of sexual orientation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  (Doc. 19.)  On February 24, 2020, G&E moved to dismiss the Amended Complaint in its entirety.  (Doc. 29, 30.)  In response, Plaintiff moved to amend the Complaint and filed an objection to the Motion to Dismiss.  (Doc. 35, 36.)  In response, the parties agreed that Plaintiff would file a Second Amended Complaint on consent and Defendant would withdraw its Motion to Dismiss and file a new motion directed at the Second Amended Complaint.  (See Doc. 41-43.)

The Second Amended Complaint sets forth four causes of action.  *Id.*  Count One alleges Negligent Misrepresentation.  Count Two alleges Negligent Infliction of Emotional Distress.  Count Three alleges Breach of the Implied Covenant of Good Faith and Fair Dealing.  Finally, Count Four alleges Wrongful Termination.

## II.  **LEGAL STANDARD**

A motion to dismiss will be granted if a plaintiff fails to state a claim upon which relief may be granted based on the allegations contained in the complaint.  Fed. R. Civ. P. 12(b)(6); *Krimstock v. Kelly*, 306 F.3d 40, 47 (2d Cir. 2002).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the United States Supreme Court clarified that Rule 8 demands more than an unadorned accusation that the defendant unlawfully harmed the plaintiff.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Nor does a complaint suffice if it provides "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when it contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*

The Supreme Court then expanded the holding of *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, it clarified that legal conclusions are not entitled to any assumption of truth for the purposes of a motion to dismiss. *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*, *citing Twombly* at 555. Second, the Court stated that courts should analyze whether the well-pleaded, non-conclusory factual allegations gave rise to a "plausible suggestion" of claims alleged. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*, *citing Twombly* at 557. If the factual allegations in the Complaint "do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not shown that she is entitled to relief and the complaint must be dismissed. *Id.* at 679, *quoting* Fed. R. Civ. P. 8(a)(2).

**III.   ARGUMENT**

  A. <u>Failure to State a Claim for Negligent Misrepresentation</u>

Count One should be dismissed because Plaintiff did not allege how she supposedly relied on the alleged misrepresentation and, as a matter of law, Plaintiff could not have taken any action in reliance on the alleged misrepresentation. The elements of a claim for negligent misrepresentation are: "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Coppola Const. Co., Inc. v.*

4

*Hoffman Enters. Ltd. P'ship*, 309 Conn. 342, 351—52 (2013).  Allegations that are conclusory in nature, and that do not explain how a plaintiff relied on an alleged misrepresentation to his or her detriment, are insufficient as a matter of law.  *See Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011) (internal citation and quotation marks omitted) (mere allegation that plaintiffs relied on the representations "do not meet the threshold requirement that a complaint set forth enough facts to state a claim to relief that is plausible on its face. . . .They are conclusory. . . .And they lack supporting factual matter indicating how plaintiffs relied on the alleged misrepresentations.  The Court can only conclude that plaintiffs have not met their pleading burden."); *Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 2011 U.S. Dist. LEXIS 2627, *13 (N.D.N.Y.) (Jan. 11, 2011, *Suddaby, J.*) (claim dismissed because "failed to allege facts plausibly suggesting how they reasonably relied, to their detriment, on any of these alleged false statements.").

Here, Plaintiff's claim for negligent misrepresentation is based on her allegation that she "was advised that the background check was necessary but would not impact her employment." (Doc. 43, ¶65.).  Plaintiff makes a conclusory allegation that she "relied on that statement which G&E knew or should have known was false." *Id. at* ¶66.  However, Plaintiff does not allege how she relied on the alleged misstatement.  Thus, the conclusory allegation of reliance does not meet the pleading requirements, and is deficient as a matter of law.

Moreover, Plaintiff was an employee-at-will and, thus, G&E retained the "unfettered discretion to end the employment relationship at any time." *Desrosiers v. Diago North America, Inc.*, 137 Conn.App. 446, 460 (2012) (reliance on statement that employee's performance did not need improvement not justifiable given that employment was terminable at will); *Petite v. DSL.net, Inc.*, 102 Conn.App. 363, 371–73 (2007) (plaintiff's reliance on letter offering employment at will

5

not justifiable since defendant could end employment relationship at any time). Thus, Plaintiff's reliance on the alleged statement was not justifiable since her employment could end at any time for any reason. Indeed, had Plaintiff refused to consent to the background check, G&E could have terminated her because of that refusal, because she was an at-will employee. This is precisely what Plaintiff alleges happened in paragraph 55 of the Second Amended Complaint, which states that "G&E demanded that Corcoran agree to a new background check or lose her job." Thus, Plaintiff's own allegations contradict any argument that she relied on the alleged misrepresentation. As Plaintiff has failed to adequately plead the third prong of a claim for negligent misrepresentation, Count One should be dismissed.

    B.  <u>Failure to State a Claim for Negligent Infliction of Emotional Distress</u>

In Count Two, Plaintiff alleges that Defendant's conduct in placing her on a performance improvement plan, subjecting her to a new background check, and terminating her as a result of the background check results, created an unreasonable risk of causing her emotional distress, and that such risk was foreseeable and reasonable in light of Defendant's conduct. (Doc. 43, ¶¶69-70.) Construed in the light most favorable to Plaintiff, these allegations fall far short of stating a legally sufficient claim for relief.

To state a claim for negligent infliction of emotional distress, Plaintiff must show that: (1) Defendant's conduct created an unreasonable risk of causing Plaintiff emotional distress; (2) Plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) Defendant's conduct was the cause of Plaintiff's distress. *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003). In the employment context, Connecticut law recognizes a claim for negligent infliction of emotional distress only where it is based on "unreasonable conduct of the defendant in the termination process." *Morris v. Hartford Courant*

*Co.*, 200 Conn. 676, 682 (1986). "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Parsons v. United Technologies Corp.*, 243 Conn. 66, 88-89 (1997). The dispositive question is whether "defendant's conduct during the termination process was *sufficiently wrongful* that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." *Perodeau v. City of Hartford*, 259 Conn. 729, 751 (2002) (emphasis in original).

"Courts within this District typically resolve questions regarding negligent infliction of emotional distress at the motion to dismiss stage, given the very limited circumstances under which the Connecticut Supreme Court has permitted such claims to proceed." *Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216, 229 (D.Conn. 2019) (claim dismissed because "none of the conduct alleged in the context of his termination was extreme or outrageous"); *see also Wellington v. Norwalk Hosp.*, 2019 U.S. Dist. LEXIS 98963, *6 (D.Conn.) (Jun. 13, 2019, *Eginton, J.*) (claim dismissed, notwithstanding allegations that defendant acted with wrongful purpose); *Brown v. Hearst Corp.*, 2015 U.S. Dist. LEXIS 111512, *26 (D.Conn.) (Aug. 24, 2015, *Bryant, J.*) (not allowing plaintiff to leave, demanding her personal cell phone and physically blocking the exit were insufficient); *Parker v. AECOM USA, Inc.*, 2010 U.S. Dist. LEXIS 13637, *14 (D.Conn.) (Feb. 17, 2010, *Eginton, J.*) (claim dismissed because failed to allege "severe conduct arose during the termination process, which was performed in an inconsiderate, humiliating or embarrassing manner."); *Adams v. Hartford Courant*, 2004 U.S. Dist. LEXIS 8546, *20 (D.Conn.) (May 14, 2004, *Hall, J.*) ("There are no alleged facts within the [] Complaint that even suggest that there was any unreasonable conduct during the actual discharge or that the discharge was done in an inconsiderate, humiliating or embarrassing manner. The fact that the termination may have been

for illegitimate reasons is not by itself sufficient to sustain a claim for negligent infliction of emotional distress."); *Walsh v. Walgreen E. Co.*, 2004 U.S. Dist. LEXIS 5564, *9 (D.Conn.) (Mar. 25, 2004, *Eginton, J.*) ("employer's conduct must be unreasonable in the manner in which the employer carries out the employment action, and to be unreasonable, the conduct must be humiliating, extreme, or outrageous. This threshold is extremely high."); *Radesky v. First Am. Title Ins. Co.*, 2003 U.S. Dist. LEXIS 15969, *10 (D.Conn.) (Aug. 29, 2003, *Arterton, J.*) (claim dismissed because wrongfully-motivated termination is insufficient); *Carvalho v. International Bridge & Iron Co.*, 2000 U.S. Dist. LEXIS 4419, *37 (D.Conn.) (Feb. 25, 2000, *Droney, J.*); Venterina v. Cummings & Lockwood, 117 F. Supp. 2d 114, 120 (D.Conn. 1999) (falsely accusing plaintiff of being violent and threatening in order to create a non-discriminatory pretext for the plaintiff's termination is insufficient to state a claim for negligent infliction of emotional distress); *Cooper v. Dick's Clothing and Sporting Goods*, 25 F. Supp. 2d 59, 61 (D.Conn. 1998) (plaintiff accused of theft and terminated after he accidentally ran out of the store while trying on a pair of golf shoes because he received an emergency call that his father was gravely ill); *Rodrigue v. Hartford Fire Ins. Co.*, 1997 U.S. Dist. LEXIS 18889, *4 (D.Conn.) (Nov. 24, 1997, *Goettel, J.*) (dismissed because "plaintiff has alleged only that she was 'wrongfully terminated.'").

Here, none of the conduct Plaintiff complains about during the termination process meets the threshold level of severity. As pled, Plaintiff was simply terminated after a prior felony conviction was uncovered during a background check. (Doc. 43, ¶¶55, 57-58.) Plaintiff has failed to allege that the termination of her employment was "sufficiently wrongful" or was extreme, outrageous or performed in an inconsiderate, humiliating or embarrassing manner. Therefore, Plaintiff fails to state a claim for negligent infliction of emotional distress and Count Two should be dismissed.

C.  Failure to State a Claim for Breach of the Covenant of Good Faith & Fair Dealing or Wrongful Termination

Count Three, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Count Four, Wrongful Termination, should both be dismissed because the termination of Plaintiff's employment did not violate any important public policy. It is undisputed that Plaintiff was an at-will employee. "In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." *Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 697-98 (2002) (internal quotation marks omitted).

Plaintiff can only recover for breach of the implied covenant of good faith and fair dealing or wrongful termination if she can establish such a violation of an important public policy. *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475 (1980) ("A cause of action for wrongful discharge of an at-will employee is permissible in those situations in which the reason for the discharge involved impropriety "derived from some important violation of public policy."). To determine whether the discharge violates an important public policy, the court looks to "whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." *Parsons v. United Technologies Corp.*, 243 Conn. 66, 77 (1997) (internal quotation marks omitted).

The Second Amended Complaint alleges that Plaintiff's termination "violated accepted and important public policies of the State of Connecticut and the federal government." (Doc. 43, ¶¶78, 91.) The two policies cited by Plaintiff are: (1) "the public policy as addressed by 'ban the box' legislation" as set forth in Connecticut General Statute § 31-51i; and (2) the "public policy of the

9

federal government, specifically set forth in the Equal Employment Opportunity Commission EEOC Enforcement Guidance dated April 25, 2012." *Id.* at ¶¶79-80, 92-93. To be clear, Plaintiff does not allege that her termination violated the Connecticut "ban the box statute" or federal non-discrimination laws. Rather, she attempts to base her claims on the supposed public policy contained within these laws. However, where a particular statute provides a cause of action, a plaintiff cannot ignore the requirements of the statute and instead rely on the public policy behind the statue.

The Connecticut Supreme Court has held, "[W]e are mindful that we should not ignore the statement of public policy that is represented by a relevant statute . . . Nor should we impute a statement of public policy beyond that which is represented. To do so would subject the employer who maintains compliance with express statutory obligations to unwarranted litigation for failure to comply with a heretofore unrecognized public policy mandate." *Daley v. Aetna Life & Casualty Co.*, 249 Conn. 766, 804 (1999) (citation omitted). Likewise, in *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 161 n. 4 (2000), the Connecticut Supreme Court held, "Because the plaintiff based her cause of action for wrongful discharge on the public policy embodied in § 31-51m, however, she was required to present evidence that created a material issue of fact with respect to whether the defendants' conduct violated § 31-51m." *See also Morrissey-Manter v. St. Francis Hosp. & Med. Ctr.*, 166 Conn. App. 510, 535 (2016) (same); *Sturm v. Rocky Hill Bd. of Educ.*, 2005 U.S. Dist. LEXIS 4954 (D.Conn.) (Mar. 29, 2005, *Dorsey, J.*) (internal quotation marks omitted) ("The Connecticut Supreme Court has held that a plaintiff who is not entitled to protection under a statute cannot use the public policy embodied therein to support her claim of wrongful discharge based upon a violation of public policy."); *Conge v. Sikorsky Aircraft Corp.*, 2007 U.S. Dist. LEXIS

90877, *32 (D.Conn.) (Dec. 11, 2007, *Dorsey, J.*) (plaintiff cannot rely on the public policy in a statute for which they cannot meet the required elements).

        1.        Connecticut General Statutes § 31-51i

Plaintiff asserts that the termination of her employment violates the Connecticut public policy relating to "ban the box" law set forth in § 31-51i, but she is wrong. Section 31-51i(f) protects individuals with a criminal past that have subsequently been exonerated. Specifically, Section 31-51i(f) states:

> No employer or employer's agent, representative or designee shall discharge, or cause to be discharged, or in any manner discriminate against, any employee solely on the basis that the employee had, prior to being employed by such employer, an arrest, criminal charge or conviction, the records of which have been erased pursuant to section 46b-146, 54-76o or 54-142a or that the employee had, prior to being employed by such employer, a prior conviction for which the employee has received a provisional pardon or certificate of rehabilitation pursuant to section 54-130a, or a certificate of rehabilitation pursuant to section 54-108f.

(emphasis added). As set forth in the statute, employers cannot terminate employees because of an arrest, charge or conviction that has been erased or for which they were pardoned or received a certificate of rehabilitation. Those specific prohibitions establish the public policy of the State of Connecticut. But Plaintiff, who admits she omitted her felony conviction from her employment application, does not allege facts that even suggest that her felony conviction was erased or pardoned, or that she received a certificate of rehabilitation. As Plaintiff cannot establish that her termination violates § 31-51i, she likewise cannot establish that her termination violates the public policy contained within that statute. Accordingly, Plaintiff fails to state a claim that her termination violates an important public policy and Counts Three and Four should be dismissed.

      2.    <u>EEOC Guidance</u>

Plaintiff also asserts that her termination violates the "public policy of the federal government, specifically set forth in the Equal Employment Opportunity Commission EEOC Enforcement Guidance dated April 25, 2012." (Doc. 43, ¶¶79-80, 92-93.)[1] This attempt also fails because the public policy set forth in the Guidance, prohibiting discrimination, is not implicated by this case and, if it were, Plaintiff would be limited to pursuing a claim under Title VII.

The Equal Employment Opportunity Commission ("EEOC") explains its interest in employers' use of criminal records as follows:

> The EEOC enforces Title VII, which prohibits employment discrimination based on race, color, religion, sex, or national origin. Having a criminal record is not listed as a protected basis in Title VII. Therefore, whether a covered employer's reliance on a criminal record to deny employment violates Title VII depends on whether it is part of a claim of employment discrimination based on race, color, religion, sex, or national origin.

(Exhibit A, p. 6.) The EEOC's only concern is that "[a]n employer's use of an individual's criminal history in making employment decisions may, in some instances, violate the prohibition against employment discrimination under Title VII…" *Id.* at p. 1. Here, Plaintiff does not allege a violation of Title VII or that the use of her criminal record somehow discriminated against her. Accordingly, the Guidance is not relevant to the present case and cannot form the basis of Plaintiff's claims.

Moreover, even if Plaintiff was alleging that she was discriminated against because of G&E's use of her criminal record, which she does not, she nonetheless could not base a claim on the public policy set forth in the Guidance. Rather, as set forth above, to establish a violation of

---

[1] Plaintiff failed to append the Guidance of provide a citation to where the Court can locate the alleged Guidance. Accordingly, G&E attaches the Guidance here as Exhibit A. Citations to page numbers within Exhibit A refer to the page numbers printed on the Guidance.

12

public policy, a plaintiff must be otherwise without remedy and cannot rely on the public policy set forth by a statute if they cannot meet the elements of the statute itself. "The question is not whether plaintiff would be without means of redress under the circumstances, but rather whether any plaintiff would be without remedy for the violation of public policy. If the cause of action were case-specific, one could easily envision a callous disregard for procedural requirements such as exhaustion of claims through the EEOC or CHRO in light of a readily available, common law cause of action….The wrongful discharge cause of action is not intended to be a catch-all for those who either procedurally or on the merits fail to establish a claim under existing discrimination statutes." *Kilduff v. Cosential, Inc.*, 289 F.Supp. 2d 12, 18-19 (D.Conn. 2003) (internal citations omitted); *see also Blantin v. Paragon Decision Res., Inc.*, 2004 U.S. Dist. LEXIS 17605, *5 (D. Conn.) (Aug. 31, 2004, *Droney, J.*) ("Since Blantin has remedies available to her under Title VII and CFEPA [for wrongful discharge], she may not bring a common-law wrongful discharge action based on a violation of the public policy embodied in Title VII and CFEPA."); *Swihart v. Pactiv Corp.*, 187 F. Supp. 2d 18, 25 (D. Conn. 2002) (barring plaintiff's common law wrongful discharge claim because she has an adequate statutory remedy for her Title VII retaliation claim); *Carvalho v. Int'l Bridge & Iron Co.*, 2000 U.S. Dist. LEXIS 4419, *24-25 (D. Conn.) (Feb. 25, 2000, *Droney, J.*) ("Because Carvalho has available to him statutory causes of action to redress the alleged public policy violations [for wrongful discharge], there is no need for a common law cause of action to vindicate the same public policies; therefore, his wrongful discharge claim is barred.").

Plaintiff cannot rely on the public policy set forth in the EEOC Guidance. The public policy of the federal government, as set forth in Title VII, is that employers cannot discriminate against applicants or employees through use of criminal records. Plaintiff does not allege that she was discriminated against and therefore she cannot rely on this public policy. In addition, no

employee can base a common law claim on the public policy behind Title VII because they are not otherwise without remedy; rather, they would be limited to pursuing their claim under Title VII.

As Plaintiff cannot establish claims for Breach of the Implied Covenant of Good Faith and Fair Dealing or Wrongful Termination, based on the public policy set forth in Connecticut General Statutes § 31-51i or the EEOC Enforcement Guidance, Counts Three and Four should be dismissed.

## IV.    CONCLUSION

For all of the foregoing reasons, the Second Amended Complaint should be dismissed in its entirety.

                              DEFENDANT,
                              G&E REAL ESTATE MANAGEMENT SERVICES, INC.

                              By: */s/ Stacey L. Pitcher*
                              Stacey L. Pitcher (ct27111)
                              OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                              900 Chapel Street, 10th Floor
                              New Haven, CT 06510
                              Tel: 860-256-0744
                              stacey.pitcher@obermayer.com

## **CERTIFICATION**

      I hereby certify that, on April 21, 2020, a copy a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court(s) electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                         */s/ Stacey L. Pitcher*
                                         Stacey L. Pitcher